Hale-Justis Drug Company v. Commissioner.
Hale-Justis Drug Co. v. Commissioner
Docket No. 110117.
United States Tax Court
1943 Tax Ct. Memo LEXIS 313; 2 T.C.M. (CCH) 39; T.C.M. (RIA) 43219; May 10, 1943
*313 Thomas C. Lavery, Esq., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies as follows: Income tax
Excess-profits
Year ended
deficiency
tax deficiency
June 30, 1939
$3,366.70
$476.72
June 30, 1940
3,552.82
637.22
The deficiencies resulted from the holding that payments denominated "interest" on certain 50-year debentures were not allowable deductions from income under section 23, Revenue Act of 1938. The petitioner contends that the debentures were evidences of indebtedness and the payments properly deductible as interest. Respondent contends that the debentures were in the nature of preferred stock and that the payments were dividends. Substantially all of the facts were incorporated in a stipulation which, with exhibits, we adopt as findings of facts. These facts were as follows: [The Facts] Petitioner is a corporation engaged in the business of wholesale drugs, organized and existing since June, 1919, under the laws of the State of Ohio, with its principal place of business at 9 West Third Street, Cincinnati, Ohio. Petitioner's customers consist *314 largely of retail druggists located mainly in the States of Ohio, Kentucky and Indiana. Petitioner's stockholders do not constitute all of its customers, although practically all of its stockholders and officers are retail druggists. Prior to petitioner's creation in 1919 the business had been carried on in partnership form. None of the individuals connected with the business prior to 1919 remained with the petitioner after its creation. Within the time prescribed by law petitioner filed income tax returns on the accrual basis for the fiscal year ended June 30, 1938 (a taxable year not here in question), June 30, 1939, and June 30, 1940, with the Collector of Internal Revenue, First District Ohio, at Cincinnati, Ohio. In computing its taxable income for the fiscal year ended June 30, 1939, petitioner claimed a deduction as "interest paid" in the amount of $16,968.56 ($16,422 of which has been disallowed by the Commissioner). In computing its taxable income for the fiscal year ended June 30, 1940, petitioner claimed a deduction as "interest paid" in the amount of $17,196.54 ($16,654.20 of which has been disallowed by the Commissioner). The taxes in controversy result solely from *315 such disallowances by the Commissioner. The following is a schedule of the changes in petitioner's capital stock account from organization to June 28, 1938: Authorized
Common
Preferred
Capital $100 Par $100 Par 7%
June, 1919
$125,000
1,000
250
December, 1920 (authorized capital increased to)
250,000
2,250
250
October, 1937 (authorized capital increased to)
318,200
3,000
182
June 28, 1938 (outstanding as of the date of
a proposed recapitalization)
2,370
182
Under date of June 28, 1938, petitioner was recapitalized and its articles of incorporation were accordingly amended to change stated capital to $30,000 by means of changing 3,000 shares of common stock $100 par value, to 3,000 shares of common stock $10 par value. For each share of common $100 par, stockholders were given one share new common $10 par and one 50-year debenture $100 face value. The preferred stock was redeemed and cancelled and for each share of $100 7- per cent preferred stock the holder thereof was given in exchange $110 face value 50-year debenture (plus an amount of cash for the callable premium and accumulated dividends). The debentures were in amounts $10of and $100 payable *316 June 30, 1938, and on the face carried, among others, the following provisions: * * * to pay interest thereon in like legal tender out of the net income of the Company at the rate of Two (2%) per cent per annum payable quarterly on the 31st of March, 30th of June, 30th of September and 29th of December in each year at the said office of the Company, Cincinnati, Ohio, to Debenture holders of record Ten (10) days prior to aforesaid quarterly interest periods, conditioned, however. upon the net income of the Company being sufficient during any interest period to pay the amount due as interest, in accord with the terms and provisions hereof. The registered owner of this Debenture may participate in the profits of the Company in a total amount, including said Two (2%) per cent, of not to exceed Eight (8%) per cent per annum, if and when such additional participation shall be authorized and declared by the Board of Directors of the Company. The interest on this Income Debenture shall not be cumulative. * * * * *
Voting rights equal to those of the Common stock may be conferred upon the Debenture holders at any time by resolution of the Board of Directors duly adopted, and Ten (10) days' *317 notice thereof mailed to all record owners of stock and debentures. This Debenture may be redeemed at the option of the Company on any interest date prior to maturity upon notice in the manner and upon the terms provided in the Trust Agreement, by payment of its principal amount and accrued interest to the date of redemption; after such redemption date, interest on the debentures called for redemption shall cease unless payment thereof shall be refused after presentation. If any of the events of default specified in the Trust Agreement shall occur, all Debentures outstanding hereunder may be declared to be due and payable in the manner and with the effect provided in the Trust Agreement. In the payment of their claims, all creditors. other than the stockholders of the Corporation. shall rank superior to the holders of this Income Debenture, but all holders of this Income Debenture shall rank pari passu with each other, and superior to the stockholders of the Corporation, with respect to their share stock. The trust indenture under which the debentures were issued contained, among others, the following provisions: The Hale-Justis Drug Company, an Ohio corporation, for value *318 received, hereby promises to pay to , or registered assigns, on the 30th day of June, 1988, the sum of $ in any coin or currency of The United States of America, which at the time of payment is legal tender for public and private debts, at the offices of the Company in Cincinnati, Ohio, unless before that date this Debenture shall have been called for redemption in accordance with the provisions hereof, and to pay interest thereon in like legal tender [out of the net income of the Company] at the rate of Two (2%) per cent per annum payable quarterly on the 30th of June, 31st of March, 30th of September and 29th of December in each year at the said office of the Company, Cincinnati, Ohio, to Debenture holders of record Ten (10) days prior to aforesaid quarterly interest periods, [conditioned, however, upon the net income of the Company being sufficient during any interest period to pay the amount due as interest,] in accord with the terms and provisions hereof. The registered owner of this Debenture may participate in the profits of the Company in a total amount, including said Two (2%) per cent, of not to exceed Eight (8%) per cent per annum, if and when such additional *319 participation shall be authorized and declared by the Board of Directors of the Company [The interest on this Income Debenture shall not be cumulative.] * * * * *
[By testimony at the hearing, it was developed that in an action in the Court of Common Pleas of Hamilton County, Ohio, filed January 23, 1943, a court order was entered February 1, 1943, purporting to correct alleged errors in the trust agreement by deleting the words shown in brackets above. The hearing in the instant proceeding was at that time on the calendar for hearing on February 15, 1943, notice of said hearing having been served on the taxpayer. The case was actually heard February 17, 1943.] Section 3. [Article III] The Company covenants that so long as any of the Debentures issued hereunder are outstanding, it will pay to the holders thereof the Two (2%) per cent interest stipulated to be paid therein before it shall declare a dividend to the holders of the Common stock of the Company. * * * * *
Section 3. [Article V] The Debentures issued hereunder are accepted by the Debenture holders with the express understanding and after consent of the Common shareholders, as evidenced by their adoption *320 of an Amendment to Article II, Section 3, on June 17, 1938, that before any election is held to elect persons to serve on the Board of Directors of The Hale-Justis Drug Company, whether the same be by the Common stockholders at their annual meeting, or by the Board of Directors to fill an existing vacancy, the Company shall give at least Ten (10) days' notice of such proposed election to the Trustees, and the Trustees shall thereafter submit to the electing group a list of names of persons, whom if elected, will be satisfactory to them. In the event the electing group fails to elect the person or persons recommended by the Trustees, then and in that event the Trustees, or any two (2) of them, may consent, in writing, to such person serving on the Board of Directors, or at their option may declare said entire issue of Debentures to be immediately due and payable with the same rights thereunder as in the case of a principal default at maturity. * * * * *
The Company and at least Two (2) out of the Three (3) Trustees concurring may, from time to time, and at any time, enter into such agreements supplemental hereto, or amendatory hereof as shall be deemed by them necessary or desirable *321 for the purpose of curing any ambiguity or of curing, correcting or supplementing any defective or inconsistent provisions contained herein, or in any supplemental agreement, or for any other purpose not substantially inconsistent with the purposes of this agreement. The 182 shares of preferred stock were held by 16 shareholders. Four shareholders, representing 25 shares, elected to receive cash instead of 50-year debentures, which petitioner paid in the amount of $2,500. Petitioner paid out but received no cash as a result of the exchanges occurring in the recapitalization. The following table shows the capital structure of petitioner immediately preceding the recapitalization as compared with the set-up after the recapitalization became effective: Prior to Recapitalization: (June 1938)
Common stock $100 par (2,370 shares
outstanding)
$237,000
7% preferred stock $100 par (182
shares outstanding)
18,200
Total
$255,200
After Recapitalization: Common stock $10 par (2,370 shares
outstanding)
$ 23,700
Fifty-year income debentures
277,970
Total
$301,670
An increase of
$ 46,470
The increase is due to: (a) 10% dividend on common stock,
payable in stock
23,700
(b) 10% dividend on Preferred stock,
payable in debentures
23,700
(c) 10% premium on Preferred stock
to those electing to receive de-
bentures in lieu of cash - 157
shares
1,570
$ 48,970
Less: Preferred stock electing to receive
cash in lieu of debentures
2,500
Total increase
$ 46,470
*322 The following table summarizes the issuance of 50-year income debentures: (a) $100 debenture for each share of old
Common stock
$237,000
(b) 10% dividend on old Common stock,
payable in debentures
23,700
(c) 157 shares of Preferred stock elected
to receive debentures in lieu of cash
(25 shares received cash)
15,700
(d) 10% additional premium paid on
Preferred stock
1,570
Total debentures outstanding June 30,
1938
$277,970
The following is a schedule of debenture activity from June 28, 1938 to June 30, 1940 (period involved in this appeal): Original issue, June 28, 1938
$277,970
Issue July 1, 1938 to June 30, 1939
3,000
Accepted in payment of Accounts Receiv-
able, July 1, 1938 to June 30, 1939
6,570
Outstanding June 30, 1939
$274,400
Issued July 1, 1939 to June 30, 1940
8,200
Accepted in payment of Accounts Receiv-
able, July 1, 1939 to June 30, 1940
2,440
Outstanding June 30, 1940
$280,160
The following is a schedule of payments made on debentures from June 28, 1938 to June 30, 1940: September
30, 1938 - 1 1/2%
$4,092
December
29, 1938 - 1 1/2%
4,092
March
31, 1939 - 1 1/2%
4,122
June
30, 1939 - 1 1/2%
4,116
Total
$16,422.00
September
30, 1939 - 1 1/2%
$4,132.50
December
30, 1939 - 1 1/2%
4,118.40
March
30, 1940 - 1 1/2%
4,200.90
June
27, 1940 - 1 1/2%
4,202.40
Total
$16,654.20
*323 The following is a schedule of payments made on common stock from June 28, 1938 to June 30, 1940: September
30, 1938 - 1 1/2%
$355.50
December
29, 1938 - 1 1/2%
355.50
March
31, 1939 - 1 1/2%
355.50
June
30, 1939 - 1 1/2%
357.00
Total
$ 1,423.50
September
30, 1939 - 1 1/2%
$357.00
December
30, 1939 - 1 1/2%
359.55
March
30, 1940 - 1 1/2%
359.55
June
30, 1940 - 1 1/2%
358.05
Total
$ 1,434.15
Petitioner has paid dividends every year since its incorporation in 1919. Immediately prior to recapitalization there were 220 shareholders and 16 preferred shareholders. The following is a schedule of the number of common shareholders and the number of debenture-holders immediately following recapitalization, and during the period here in question: 50-year
Common
Debenture-
Shareholders
holders
July 1938
219
223
June 30, 1939
219
225
June 30, 1940
214
223
The 50-year income debentures are not listed on any stock exchange. Petitioner does not advertise to induce prospective purchasers to buy and it has no prospectus. Petitioner makes no particular effort to sell debentures and such sales as occur are usually to, or recommended *324 through, retail druggists or doctors; and petitioner pays no commissions on any such sales. The 50-year income debenture issue was not listed with the Securities Exchange Commission, and no Federal documentary stamps were attached to the stock transferred back at the time of their issuance on recapitalization. Such formalities were omitted for the reason that the 50-year debentures were issued in exchange for old stock. Since the 50-year debentures were issued, 6 per cent annually has been paid to the holders thereof. [Opinion] The determination of the problem presented in a case such as this requires a nice balancing of the various elements of proof, a weighing of such factors and the rendition of a decision to the side in whose favor the weight of the evidence preponderates. Here there are certain factors to which petitioner may point as supporting its contention, viz., the name given the certificates, the definite maturity date, the use of the word "interest" in the certificates and the treatment accorded it on the books, and the claimed intent of the parties as evidenced by the record in the State court action. As has often been said, no single factor is controlling. All *325 must be weighed and tested in the perspective of all of the evidence. In the present case the weight of several of the cited factors is weakened by other factors of record. While the debentures were nominally for a full term of 50 years there were, in the trust agreement under which they were issued, so many eventualities in which at the election of the debentureholders the debentures might be caused to fall immediately, that it lessens the weight otherwise attaching to this element. The use of the name "interest" to characterize the periodical increment is evidentiary only, never conclusive. Here, during all of the period in question, the payments to the debenture-holders were six per cent, under favor of the provision permitting the debenture-holders to share in the profits, not limited to the "2 per cent interest" called for by the face of the certificates. As to the intent of the parties, petitioner claims that payments were to be made absolutely and not merely out of profits. Some testimony was adduced calculated to establish that the original form of the debenture which was in vogue during the taxable year did not accurately portray the intention of the company. It was developed *326 that shortly before the hearing in this Court, an action was brought in the Court of Common Leas of Hamilton County, Ohio, to strike certain language of the debenture so as to make interest payable at all events, irrespective of profits, and for certain other changes. An inspection of the pleadings and transcript of evidence taken in the Ohio state court and the statements of counsel in the instant case reveal that this State court action was initiated after preparation for the trial of the present case before the Tax Court was begun and that it was apparently at the instance of petitioner's tax counsel. It is noted, moreover, that the parties did not follow the procedure set out in the trust indenture for "curing, correcting or supplementing any defective or inconsistent provisions contained" therein "or for any other purpose not substantially inconsistent with the purposes" of that document. There had been no complaint by the debenture-holders as to their rights thereunder. It is obvious that the parties were moved solely by the tax consequences that it was feared might be found to follow the original language used. It is unnecessary for us to adjudge the rights of the parties *327 inter ses under the socalled corrected or reformed agreement or to attempt to predict what consequence may follow in controversies in the Ohio courts but certain it is that no nunc pro tunc reformation conceived and carried out with an eye to tax saving after the tax controversy has arisen can be given any standing in this Court. The rights of the parties, the United States and the taxpayer, will be judged by the status of facts existing when the controversy arose. Since this single factor is not determinative of our conclusion, we do not find it necessary to characterize the State court action as collusive but certainly it smacks of that nature. See , affirming . We can give no recognition to the action taken in the State Court. So viewing the matter as of the time of origin of the tax controversy, we find that the payments of socalled interest were made only out of net income and were not cumulative. Attention naturally focuses also on the provision in the certificate that "voting rights equal to those of the common stock may be conferred on the debenture-holders *328 at any time by resolution of the Board of Directors * * *", a provision directly suggestive of preferred stock. In this connection, we read with interest the provision giving the trustees for the debenture-holders a veto on any action of the common shareholders in electing a board of directors for the company, with a right or option "in the event the electing group fails to elect the person or persons recommended by the trustees" to "declare said entire issue of debentures to be immediately due and payable * * *" Certainly a direct right of control in the management of the company. One of the cardinal tests in a case of this character is the presence or absence of the right of the debenture-holders to share in the profits of the enterprise. Here it was specifically provided that the registered owner of the debenture "may participate in the profits of the company" in an amount not exceeding 8 per cent, including the two per cent interest, if and when declared by the board of directors. As a matter of fact, the debenture-holders have regularly so participated in the profits of the company in excess of the stated two per cent "interest". Other elements worthy of note are the stock *329 history of the company with the substitution in effect of the debentures for preferred stock formerly outstanding, the fact that no new money went to the corporation as a result of the issue of the debentures, no sinking fund or process of amortization was provided, and the preference over debenture-holders given to all creditors other than stockholders in the payment of their claims. On the whole record there is no doubt as to the preponderance of the weight of the evidence and we come readily to the conclusion that the 50-year debentures issued by the petitioner partook more of the nature of preferred stock than of a loan or an indebtedness and that, accordingly, the payment of the increment earned was a payment of dividends. not a payment of interest. It follows that respondent should be sustained. Decision will be entered for the respondent.